## ROBB v. DAY et al.

### (Circuit Court of Appeals, Sixth Circuit. November 14, 1898.)

### No. 566.

**1. ESTOPPEL—DEFECTIVE DEED—RECOGNITION OF GRANTEE'S TITLE.**

Where a man, after conveying property through a third party to his wife, took and recorded a power of attorney from her, authorizing him to manage the property as her agent, under which he made leases in her name, and during the remaining 30 years of his life many times admitted, and never denied, her title to the property, his devisees are estopped from denying the legal sufficiency of the deeds by which the title was conveyed to her.

**2. EQUITY—LACHES—ENFORCEMENT OF PAROL TRUST IN REAL ESTATE.**

A delay of 23 years by one claiming an interest in real estate under a parol trust, and his devisees, after he had knowledge that the trust was denied by the holder of the legal title, before commencing suit to establish such trust, is such laches as will bar relief, in the absence of special circumstances excusing such delay.

Appeal from the Circuit Court of the United States for the Eastern District of Michigan.

The statement of the case by Judge SWAN at the circuit is given below:

The bill in this cause was filed against Daniel Hand in his lifetime, to enforce an alleged trust in, and to obtain an accounting of, the rents, profits, and proceeds of lots 6, 7, 8, and 9 of the military reserve, in Detroit, said lots having a frontage upon Michigan avenue of about 200 feet. The property described is near the center of the city of Detroit, and is valued at more than $100,000. The original defendant, Daniel Hand, was a citizen of the state of Connecticut; and this suit was instituted under the provisions of section 8 of the act of March 3, 1875 (18 Stat. 470), by the service upon him of the order provided for in that section, requiring him to appear and plead. Hand died before the case was brought to issue upon the pleadings, and the defendant Morris was substituted as his executor. Pending the suit, Morris died, and Wilbur F. Day, a citizen of Connecticut, has been substituted as the representative of the estate of defendant Hand. The original complainant, Cromelien, was a citizen of Nebraska, and sued as administrator with the will annexed of Rowland Cromelien, deceased. Complainant died pending the suit, and John H. Robb, a citizen of the state of Nebraska, has been substituted as the representative of the estate of Rowland Cromelien, deceased. The bill of complaint is framed upon the theory that the property above described, in which it seeks to have a trust declared, and for a recovery of the rents and profits of the same, was owned by Rowland Cro-

melien, deceased, although the legal title was of record in Amelia Cromelien, his wife, and so remained during the period in which the transactions complained of by the bill occurred.

To a proper understanding of the questions in the case, a brief history of the title to the lots, in which the complainant seeks to have a trust declared, and an accounting of rents and profits, is essential. About the 11th of June, 1833, Rowland Cromelien, the ancestor of the original complainant, received from the city of Detroit certificates in his own name for the purchase of the lots in question. These were paid for, as appears from the municipal records, in installments; and on January 14, 1836, the city of Detroit executed and delivered a deed of said lots to Amelia Cromelien, the wife of Rowland, which recites the payment by the grantee, Amelia, at the consideration for the conveyance, which it acknowledges had been received from her. September 26, 1836, Rowland and Amelia conveyed the property to one Seymour; and on October 31, 1836, Seymour executed a deed thereof to Rowland, the husband. Rowland held the property under Seymour's conveyance until April 4, 1842, when he and his wife united in a deed thereof to Washington Cromelien, who, on the next day, April 5, 1842, conveyed it by warranty deed to Amelia. The bill ignores entirely the last two conveyances, and the complainant denies any efficacy to them whatsoever, insisting that, by reason of defects in the acknowledgment, neither was entitled to record; and, although they were duly recorded, such record was not notice of the deeds, even as against Rowland Cromelien, one of the grantors, and therefore his title was not affected or impaired. So far as the record shows, these conveyances, if entitled to be considered at all, seem to be purely voluntary, and, as defendants claim, cogent evidence of a gift of the lots by Rowland to his wife, unincumbered by any trust or agreement, from which an equity in Rowland's favor could be inferred. There is no evidence that they were given upon any understanding between the husband and wife. The legal title of record, unless these last conveyances were utterly void, remained in Amelia Cromelien, from the last-mentioned date until its extinguishment by the sale had under a decree of foreclosure in the suit of David Robinson against Rowland Cromelien and Amelia Cromelien, in the circuit court for the county of Wayne, in chancery, upon a mortgage executed by Rowland and Amelia covering the property in question. The deed under this foreclosure sale was executed by the circuit court commissioner upon the 30th of August, 1867, to Edmund Hall, who bid in the premises at the sale, and April 4, 1868, conveyed the same to Daniel Hand by quitclaim deed, for the consideration of $3,629. The mortgage foreclosed by this decree and sale was executed to W. H. Willock, February 15, 1856, and by him assigned February 18, 1856, to David Robinson, the complainant in the foreclosure suit. On March 24, 1858, suit to foreclose the Robinson mortgage was begun, and George E. Hand, a reputable attorney and counselor, of Detroit, was retained to defend, and his partner, Edmund Hall, prepared the answer to the bill. This litigation was not brought to a close until, as stated, August 30, 1867. During its progress a voluminous correspondence running through all these years was had between Hand and Rowland relative to the defense of the cause, the payment of taxes upon the property, its condition, and the interest of Rowland in it; Hand repeatedly notifying Cromelien that the taxes were accumulating, and that Amelia, Rowland's wife, had the legal title to the lots. April 25, 1857, Rowland and Amelia Cromelien united in the sale and conveyance to George H. Parker, of Detroit, for the sum of $4,500, of another lot in the city of Detroit, and received in part payment of the consideration the bond of Parker, secured by a mortgage on the lot conveyed for the sum of $2,500. These securities were left in the possession of George E. Hand, and, as the bill claims, under instructions by Rowland to Hand to apply the proceeds of the securities to the payment of the taxes assessed, and to be assessed, upon lots 6, 7, and 8 of the military reserve. The bill alleges that it had been arranged between Parker and Rowland Cromelien that Parker was to pay such taxes by way of satisfaction of the mortgage, and would have done so but for the wrongful acts of George E. Hand, set forth in the bill. It also appears that on the 18th of July, 1854, prior to the execution of the mortgage to Willock, Amelia had executed and

delivered to Rowland a power of attorney, whereby she authorized him to sign checks, notes, and drafts in her name with general powers, and that said power was, by its terms, irrevocable for the period of 10 years.

The bill further charges that in 1859 an alienation had arisen between Rowland and Amelia, and they were living apart, Amelia in New York City, and Rowland in St. Louis, Mo.; and that, this fact coming to the knowledge of Hand through his professional relation to Rowland, Hand set about availing himself thereof to deprive Rowland of his said title. The specific wrongful acts charged against George E. Hand in furtherance of this purpose, and in violation of his professional duty as a solicitor, which constitute the gravamen of the bill, are, briefly stated, the following: (1) The payment to Amelia of the moneys arising from the sale of the lot to Parker, instead of applying the same in payment of the Robinson mortgage and taxes, or returning the bond and mortgage to Rowland. (2) Hand's conspiring with Amelia to deprive Rowland of the land in controversy, and divide the proceeds with her. (3) To promote the object of said conspiracy with Amelia, and to prevent Parker from paying the taxes on the lands in controversy, turning over the Parker bond and mortgage to Amelia. (4) In furtherance of the conspiracy, keeping Rowland in ignorance of the revocation of Amelia's power of attorney, and the recording of said revocation, and concealing the delivery and collection of the Parker bond and mortgage from Rowland, who did not learn of these acts until 1867 and 1868, respectively. (5) Fraudulently taking advantage of Rowland's ignorance of the delivery to Amelia of Parker's bond and mortgage, whereby George E. Hand was able to secure for Daniel Hand a large number of taxes, leases, and tax titles on the lots in which the trust is claimed by the bill. (6) Procuring the substitution of George A. Willcox as solicitor for Rowland in the Robinson foreclosure suit, March 24, 1860, in order to make it appear of record that George E. Hand was not Rowland's solicitor, while continuing to manage said suit on behalf of Rowland in different capacities. (7) Keeping the substitution of George A. Willcox from the knowledge of Rowland until after the termination of the Robinson suit. (8) During the pendency of said suit, writing to Rowland in such a way as to lead him to believe that Hand was still his solicitor. (9) From 1861 to 1868, dissuading Rowland from coming to Detroit, as he desired. (10) "Keeping Rowland in ignorance as aforesaid," and meanwhile allowing the lots to be sold for taxes, and bidding the same off at tax sales through George A. Willcox, and causing the title to be conveyed to Daniel Hand for the purpose of disabling Rowland from protecting his rights therein. (11) Concealment by Hand of the fact that he had obtained these titles and of his possession of the certificates, and withholding the same from record. (12) Fraudulently, and to achieve the object of his conspiracy, inducing Rowland to procure the assignment to himself at an expense of $600 of a mortgage executed January 28, 1856, by Rowland, of said lots to Alexander McKay, for $10,250, and persuading Rowland to record the assignment by McKay to Rowland of this mortgage. (13) That Hand procured additional tax titles to be used against Rowland, and contrived to have them paid for out of the proceeds of the land when sold on foreclosure. (14) After the decision, April 23, 1867, by the supreme court of Michigan, of the appeal in the case of Robinson v. Cromelein, 15 Mich. 316, advising Rowland that no sale could take place under the decree, which allowed him until August 1, 1867, to pay until the claims against the land were paid off, thus preventing Rowland from paying the amount of the decree and preventing the sale. (15) That Hand, upon the decision of the supreme court, departed for Europe, and there remained until November, after the sale of the property under the foreclosure decree, misleading and keeping Rowland in ignorance by letters, and preventing him from protecting his interest; that the land was then worth $40,000, and Rowland could have readily raised the incumbrances upon it. The lots were struck off upon the foreclosure sale August 30, 1867, to Edmund Hall, for $3,629. Hall, on the same day and for the same consideration, conveyed the lots to Daniel Hand, who had paid the additional sum of $1,681.73 for taxes and tax titles thereon, including interest. (16) The concealment by George E. Hand from Rowland of the fact of the foreclosure sale, and of the tax titles held by Daniel Hand; his

failure to record the foreclosure deed and the deed to Daniel Hand, and to take out deeds or leases on tax certificates until March, 1868. (17) For the purpose of keeping Rowland in ignorance of the sale, Hand failed to enter an order confirming the sale, and left Rowland's tenant in undisturbed possession. (18) Taking a power of attorney, March 18, 1868, from Daniel Hand, empowering him to defend suits, etc., on learning that Rowland Cromelien was about to come to Detroit. (19) Acting as agent of Daniel Hand, George E. Hand, in March and April, 1868, took out 16 tax deeds and leases on said certificates, and April 17, 1868, recorded them, together with the foreclosure deed and Hall's deed to Daniel Hand; also, George E. Hand's refusal to recognize Rowland as having any rights in the premises, and his claim that Daniel Hand held the absolute title as against him.

The bill also alleges "that, about the time Rowland came into contact with George E. Hand, he (Rowland) had been misled into believing that the deeds from Amelia and himself to Seymour, and from Seymour to himself, were void, and vested no title in said Rowland"; adding: "And although said Hand well knew such deeds to be valid, and that said Rowland was vested with the legal title to said land, he kept said Rowland in ignorance of his rights, and thereafter took advantage of such ignorance to deprive him of these rights." It is not charged that Hand misled Rowland as to the effect of the Seymour conveyances, nor is any person accused of inducing the alleged erroneous belief, but the extent of Hand's fault as to Rowland's supposed error is his failure to correct it. After the sale of the lots under the Robinson decree to Edmund Hall, and his conveyance to Daniel Hand, an accounting was had between Daniel Hand and Amelia Cromelien as to the amount due Daniel Hand for taxes upon the property; paid by him, and for tax titles thereon which he had purchased; and the sum of $26,816.72 was found to be due to Daniel Hand. Amelia Cromelien assented to this result, and Hand, on his part, agreed to convey the land to Amelia upon her repaying him that sum, with interest. The bill claims that much less than this amount was due Hand, and that by this settlement with Amelia, which the answer pleads was a full adjustment of all matters of accounting of difference between Daniel Hand and Amelia, Hand obtained the sum of about $15,000 in excess of what was fairly due him for his advances. Daniel Hand and his grantees have been in possession of the premises, claiming title under the foreclosure sale, since August 30, 1867; and Daniel Hand's grantees still claim and hold the property.

On the 5th of August, 1878, Amelia having failed to pay Daniel Hand the sum secured upon the property, the latter filed his bill in the circuit court for the county of Wayne, against the administrator, devisees, and legatees of Amelia Cromelien, to foreclose his mortgage upon the property, and for an accounting and sale. The suit proceeded regularly to a hearing and decree, and on the 15th of September, 1879, the sum of $52,064.92 was decreed to be due to Daniel Hand, and the land ordered to be sold. April 15, 1880, the mortgaged property was sold and bid in by Daniel Hand for $54,500, and a deed of the premises was executed to him. The bill recites certain conveyances of part of the property, made by Daniel Hand after his title had been perfected by the foreclosure; among others, one to the defendant Freud for $60,000, upon which there is owing and secured by mortgage the sum of $50,000. It is the complainant's claim that the whole amount due Daniel Hand, April 21, 1885, for moneys advanced by him to Amelia Cromelien, and for the benefit of the property, with the interest thereon, was less than $19,644.51, and charges that Daniel Hand had received, after his acquisition of the property by the foreclosure sale of 1880, large sums of money by way of rents and profits, for which he ought to account. The bill prays an accounting, and that Hand be held as trustee for the sums alleged to be due from him for the rents and profits of the property, and that the amount due upon the Freud mortgage be declared to be equitably the property of the complainant, and that the mortgagor be decreed to account and pay over the same to complainant.

On May 13, 1868, Rowland Cromelien filed his bill of complaint in the circuit court for the county of Wayne, in chancery, against Amelia Cromelien, his wife, George E. Hand, and Daniel Hand, alleging his purchase

from the city of Detroit of the premises in controversy in this suit; that the fee therein had remained in his wife; that the premises had been sold under foreclosure of the Robinson mortgage; and that, during the proceedings in said foreclosure case, a large amount of state and county taxes had been levied and assessed upon the property from the year 1856 to 1861, both inclusive, and also that a large amount of taxes were levied and assessed upon the property to defer contingent expenses of the city of Detroit; that the premises were sold for unpaid taxes, and the titles acquired by Daniel Hand; and that tax deeds were issued to him, conveying said premises, and also leases issued by the city of Detroit, for the unpaid taxes assessed for city purposes for several years. The bill charges that George E. Hand had caused said tax titles, leases, and deeds to be executed to Daniel Hand, his brother, who claimed absolute ownership of the property, but was, in fact, a mere money lender for the purpose of securing investments for the payment of said taxes, and that the moneys advanced by said Daniel Hand were, in fact, the moneys of George E. Hand, Rowland's solicitor in the Robinson foreclosure case, and that Daniel Hand acted in acquiring the title under said tax deeds in the place of and for the said George E. Hand. The bill further avers that Amelia had frequently admitted that the premises in controversy were the property of Rowland, but, for the purpose of cutting off his equitable interest therein, she had permitted said tax titles to accrue and said tax conveyances to be made to the said Daniel Hand, who took the titles thus conveyed, with all the knowledge in relation to the premises possessed by said George E. Hand, and with the same rights and duties as if said conveyances had been executed to George E. Hand himself; that there had been no communication between Amelia and the said Daniel Hand, who had made his advances entirely upon the representations and request of said George E. Hand. There is no charge of any malversation by George E. Hand further than that given above.

January 15, 1869, the bill was dismissed, for failure to file security for costs. September 3, 1869, upon the complaint of Rowland Cromelien, George E. Hand was arrested, and brought before the police justice of Detroit, charged with deceit and collusion in his professional capacity as solicitor of record for Rowland in the foreclosure case. It being shown that Hand ceased to be solicitor of record in said case for Rowland in 1860, the complaint was dismissed by the police justice, September 18, 1869, and Hand was discharged. On the same day, Hand caused the arrest of Rowland Cromelien upon a capias in a suit for malicious prosecution; and Rowland was held to bail on said charge. February 9, 1870, the suit was terminated by a verdict for $100 in favor of Hand. Rowland Cromelien died February 2, 1873; and April 22, 1873, his will, executed September 11, 1868, was duly probated in the supreme court for the District of Columbia. Among other provisions, "it devised to Sarah Ferguson, whose name before marriage was Sarah M. Glory, all the interest I have on the property at Detroit, state of Michigan, now prosecuted by Mr. D. E. Holbrook, my counselor at said place against my wife, Amelia Cromelien, for moneys paid and advanced by me since 1833; and, in the event of the demise of said Sarah Ferguson, then the same interest as now claimed by me for her children, whose names are Rowland, Henry, John, and Sarah Ferguson," etc. The suit referred to in this clause of the will, as prosecuted by Mr. Holbrook, was the bill the substance of which has been just stated. This will was probated in Wayne county, Mich., January 6, 1891, preparatory to the bringing of this present suit, which was filed September 16, 1891. Amelia Cromelien died, testate, in New York, June 13, 1877, where her last will and testament was probated December 18, 1877, devising her estate, real and personal, except certain legacies, to the children and grandchildren of Rowland Cromelien and hers. George E. Hand died August 30, 1889, having for several years prior to his death been mentally incompetent and under guardianship.

## In dismissing the bill, Judge SWAN said, in part:

It will be seen from the foregoing statement of the facts that the foundation of the bill is the supposed title of Rowland Cromelien to the property

in controversy. Unless the proofs establish this contention in behalf of complainant, the entire theory and foundation of the complainant's case utterly fails. It is insisted in his behalf that as the title to the property in question was acquired from the city of Detroit in the name of Amelia Cromelien, the wife of Rowland, prior to the adoption of the Revised Statutes of 1846, which first enacted that no resulting trust should arise in favor of a party paying the purchase money of realty, the title to which was taken in the name of another, unless evidenced by writing, it is open to complainant to prove such resulting trust by parol. The circumstances relied on in support of the claim that the conveyances to Amelia of these lots in 1836, by the city of Detroit, created a resulting trust in favor of Rowland, is the fact that installments of the purchase money are credited to him upon the books of the city of Detroit, and the payments of such installments acknowledged to have been received from him by the proper city official; that Rowland, in his correspondence with George E. Hand, repeatedly asserted that the purchase money was furnished by him; and that he owned the property, and had merely put it in his wife's name for convenience, and to accomplish several objects which he then had in view. Repeated declarations of this sort by Rowland are found in this correspondence, but proof is entirely wanting of any other fact or circumstances from which it can be inferred or reasonably argued that Amelia held the property in trust or upon any condition or agreement whatsoever with her husband. While the statute forbidding resulting trusts unless evidenced by writing was not in force until 1846 (Trask v. Green, 9 Mich. 358), such trusts, though alleged to have arisen out of transactions prior to that year, must be clearly proven, especially after so great lapse of time and the death of the principal actors in the affair, and of all the witnesses who could have been cognizant of the facts attending the conveyance and the purpose for which it was given. * * * Waterman v. Seeley, 28 Mich. 77; Brown v. Bronson, 35 Mich. 415; Palmer v. Sterling, 41 Mich. 218, 2 N. W. 24; Reynolds v. Morris, 17 Ohio St. 510; Edgerly v. Edgerly, 112 Mass. 175.

Upon familiar rules of evidence, the assertions of Rowland of his ownership of the property are declarations in his own interest, which cannot avail in proof of a title. Amelia claimed that the property was purchased with her own means, derived from her father's estate. Whatever weight is given, therefore, to the declarations of Rowland concerning his title to the property, must also be accorded to the denials of his wife and the assertions of her own title. The necessity of clear proof of the trusteeship of the wife in favor of the husband is also recognized in Prevost v. Gratz, 6 Wheat. 481; Slocum v. Marshall, 2 Wash. C. C. 397, Fed. Cas. No. 12,953; Smith v. Burnham, 3 Sumn. 435, Fed. Cas. No. 13,019; Hopkins v. Grimshaw (U. S. Sup. Ct., Oct. Term, 1896) 17 Sup. Ct. 401. * * *

If, by any possibility, it could be successfully claimed that a trust resulted in favor of Rowland under the conveyance by the city of Detroit to Amelia, such trust was terminated by their joint action in conveying the property to Seymour, and his reconveyance to Rowland, by which Rowland became vested with the complete legal and equitable title. There is absolutely no evidence that Amelia held whatever title she claimed in the lands under any trust created after 1836, the date of the conveyance from the city of Detroit. If the deeds of Rowland to Washington Cromelien, and of Washington to Amelia, were valid, either per se or by reason of the requisite possession and claim of title held under them by Amelia and her grantees, they are fatal to complainant's bill. It is the claim of the complainant that the deed to Washington Cromelien and his deed to Amelia were not so executed and acknowledged as to be entitled to registry, and, indeed, were wholly void. The defect charged to exist in the conveyance to Washington from Rowland and Amelia is the lack of the clerk's certificate required by the law of Michigan then in force (Laws 1840, p. 166). Section 2 of the act referred to required that deeds of land in this state, when executed in any other state or territory, should have a certificate of the proper county clerk attached to the instrument that such deeds were executed according to the laws of such state or territory. The certificate of acknowledgment to this deed reads:

"State and County of Wayne—ss.: On the 4th day of April, 1842, before me came Rowland Cromelien and Amelia, his wife, known to me, respectively, to be the individuals described in and who executed the within conveyance, and acknowledged before me that they executed the same. And the said Amelia, being privately examined by me, apart from her husband, acknowledged that she executed the said conveyance freely, and without any fear or compulsion of her said husband.

"D. Hobart, Commissioner of Deeds."

The omission from the clerk's certificate pointed at is the absence of the affirmation that the deed was executed according to the laws of New York. It is urged that this invalidates the record, and is not cured by section 3 of the act of 1861 (2 How. Ann. St. § 5726), which provides: "No deed of land situate in this state, heretofore or hereafter executed, shall be deemed defective by reason of any informality or imperfection in the certificate of acknowledgment if it shall sufficiently appear by such certificate that the person making the same was legally authorized to take such acknowledgment, and that the grantor or grantors named in such deed were personally known to him and that he or they personally appeared before him and acknowledged such deed to be his or their free act; and if such deed was executed out of this state, it shall be sufficient if the certificate under the seal of office of the clerk, or other proper certifying officer of the court of record of the county or district within which such acknowledgment was taken, in cases where any such certificate was required sufficiently to show that the person before whom such acknowledgment was taken, was, at the date thereof, such officer as he is therein represented to be; and whenever such deed has been recorded in the office of the register of deeds of the proper county, such record shall be effectual for all purposes of a legal record, and the record of such deed, or a transcript thereof, may be given in evidence as in other cases. Provided, that nothing in this section or in the preceding two sections contained shall impair the rights of any person under a purchase heretofore made in good faith and on valuable consideration."

We are not called upon to consider any other defect in the acknowledgment or certificate than that mentioned. The deed without the acknowledgment was valid inter partes. Brown v. McCormick, 28 Mich. 215, 219. * * * In Healey v. Worth, 35 Mich. 166, it was held that a deed to which no clerk's certificate was attached at the time it was recorded was cured by the act of 1861 (2 How. Ann. St. §§ 5726, 5727), the court saying: "We think all such defects are clearly within the letter and spirit of this statute." There is no force, therefore, in the objections urged to the deed to Washington Cromelien. Its effect was certainly to vest in the grantee the title to the property it conveyed. If, by reason of any informality in Washington Cromelien's conveyance to Amelia Cromelien, it failed to pass the title to her, the conveyance to Washington certainly clothed him with the title, and deprived Rowland of his estate therein. If such was its effect, the complainant, as the administrator of Rowland, has no concern in the disposition of the property, and no interest therein which entitles him to maintain this suit.

Passing now to the deed from Washington Cromelien to Amelia, the objections are found to be more serious. That instrument was acknowledged before a commissioner for the city of New York, authorized to take acknowledgments of deeds to be recorded in the state of New York. In addition to this defect, the certificate recites as follows: "* * * Appeared Washington Cromelien, and acknowledged that he had executed the within instrument; and at the same time appeared before me Joshua B. Wolf, who, being by me duly sworn, deposes that he resides in the city of Philadelphia, and that he knows the person making the said acknowledgment to be the person who executed the said instrument, which is to me satisfactory evidence thereof." It is well objected that Griscom, the commissioner whose acknowledgment is appended to the deed, had no authority to take such acknowledgment under the laws of Michigan. If this were the only evidence of Amelia's title, it must fail, but the proofs are abundant that Rowland Cromelien repeatedly and deliberately acknowledged that he had conveyed this property to his wife. As late as 1868, he had filed his bill of complaint in the circuit court for the county of Wayne, to compel, among other things,

a reconveyance from her. Long before that time, he had repeatedly admitted his wife's title to the property. On July 18, 1854, 13 years after the deeds of Rowland and Amelia to Washington and the latter's deed to Amelia, Rowland obtained from his wife a power of attorney irrevocable for 10 years for her and in her name to lease any or all of her lots in Detroit for a term of not less than 21 years, to execute a mortgage for not exceeding $5,000 upon the Michigan avenue and Wayne street lots, and generally to do all and every act or thing that she could do if personally present. No later or other conveyances of the property to Amelia than those from Rowland and Washington Cromelien are proved, and the inference is irresistible that, in accepting this power of attorney from his wife, and in his frequent admissions of her ownership, Rowland acted with the full knowledge of the fact that the legal title was in his wife, and that he intended to recognize the Washington Cromelien deed, and did thereby recognize and admit it; for otherwise the power of attorney would have been purposeless and useless, and his admissions would have been without motive. This instrument was executed and recorded long before 1857, when Rowland became acquainted with George E. Hand, and before he had had business relations with him, or even knowledge of his existence. Whatever authority Rowland exercised over the property after the execution of this power must be referred to the instrument, and not to any other source; for, under Rev. St. 1838, p. 344, both Rowland and Amelia being then nonresidents, the latter's interest was absolute and alienable by her alone, and she might lawfully "make and execute any deeds and other instruments in her own name, and do all other lawful acts that might be necessary and proper to carry into effect the powers so granted to her [by the statute]." By the act of 1844 (Sess. Laws 1844, p. 77, re-enacted in Rev. St. 1846, p. 340), "any real or personal estate which may have been acquired by any female before her marriage, * * * or to which at any time after her marriage she be entitled by inheritance, gift, grant or devise, and the rents, profits and income of any such real estate, shall be and continue the real and personal estate of such female after marriage to the same extent as before marriage." * * * Under these statutes and the act of 1855, Amelia's right to come into the state and convey the fee was unquestionable. Tong v. Marvin, 15 Mich. 60. The fact that she gave her husband this power of attorney in no degree qualified her ownership of the premises. The management of the wife's property by the husband is too common an act to detract in the least from the wife's title, and there is no evidence that the title conveyed by the Washington Cromelien deed was limited by any trust or obligation whatsoever in favor of Rowland. In September, 1859, Amelia revoked this power of attorney; and since that time no act of Rowland's is shown questioning her absolute ownership until the filing of his bill of complaint in the circuit court for the county of Wayne, May 13, 1868, in which he alleges positively "that the fee in said premises has, until lately, remained in the said Amelia," although he says he had managed, controlled, and used it as his own for over 25 years. The phrase "until lately," had reference to the divestiture of Amelia's title by the sale of the premises had under the foreclosure decree rendered in the suit of Robinson v. Cromelien, in 1867, supra. Rowland also alleges in his bill the execution of the power of attorney in 185–, by Amelia, authorizing the incumbering of these lots, and he prayed that Amelia might be compelled to execute a good and sufficient deed of the premises to him, and that he might be declared to be the owner thereof by reason of having paid the original purchase price therefor. * * *

The power granted by Amelia, so far as it relates to the premises in suit, "is to execute a mortgage not exceeding $5,000 on my lots known and described as bounded on Michigan avenue and Wayne streets." This recital of her ownership, if not conclusive against Rowland by reason of his acceptance and acts under the power, is an unequivocal admission by him of her title, which can only be referred under the proofs to the effect of the Washington Cromelien deed, as that was the last conveyance which he had made to her. Bursley v. Hamilton, 15 Pick. 40; Bruce v. U. S., 17 How. 437, 442; Carver v. Jackson, 4 Pet. 1, 86. These facts alone should suffice to create an equitable estoppel against his right to disturb her possession, or that

of her grantees, who had dealt with the property upon the faith of his conveyance to Washington Cromelien, and the latter's deed to Amelia, and Rowland's repeated recognition of the title it purported to convey. Kirk v. Hamilton, 102 U. S. 68.

The proofs further show that Rowland acted under this power of attorney, and in the name of Amelia, by himself as her attorney, executed and acknowledged a lease of the premises to one Champ, November 23, 1855. The covenants run to Amelia, her heirs and assigns. No technical defect in the attestation or acknowledgment of the deeds under which Amelia claims title ought under such circumstances to be permitted to defeat the title intended to be conveyed. Cherry v. Heming, 4 Exch. 633. There is no evidence that Rowland ever repudiated the deed to Washington Cromelien, or questioned that from Washington to Amelia. While he frequently asserts in his correspondence with Hand that the land was held by his wife for him, and denounces her for asserting title thereto, he never at any time assailed the genuineness of the deeds under which she claimed or questioned their validity in any particular.

At Rowland's request, George E. Hand, on April 4, 1860, sent him a compared copy of the abstract of title of these lots, the receipt of which Rowland acknowledged June 22, 1860. This reminded him, if he needed any reminder, of the sources of his wife's title, and necessarily also, as there was no conveyance from her to himself, that the fee still remained in her. Rowland had had and copied the original abstract as early as February, 1856, as shown hereafter. He was also repeatedly informed by Judge Hand, in their correspondence from 1857, until long after the foreclosure decree and sale under the Robinson mortgage in 1867, both that Amelia claimed the property, and that the records in the office of the register of deeds supported her claim. It would extend this opinion to too great length to cite all of the numerous instances which abound in the record of Hand's mention of this fact to Rowland. Rowland's own references to it in his correspondence again and again recognized his wife's title. July 20, 1863, he wrote Hand in reference to this subject, inter alia: "I now want you to get the property so shaped, and for which we have time, to get said title of property into my name back again where it properly belongs. * * *" And writing of the McKay mortgage, which was a fictitious incumbrance he had placed upon the property to effect certain purposes of his own, he says: "Dear Sir: I now see that you have your ideas, and I believe know from me why I have placed the mortgage to McKay on record, and that the same is without consideration; that its real object is only to bring about a change of the title of that property through my two minor boys." * * * His project, stated in the same letter, was to use this McKay mortgage by having Hand advertise its foreclosure in obscure newspapers of literary or religious character, in Lansing and Detroit, so as to satisfy the requirement of the law by its advertisement in two newspapers; and, after the disclosure of his project he added: "Now, when the matter is once done in this shape, all trouble is removed against myself and the title in me. I then would have no difficulty in negotiating or selling here or elsewhere, subject only to the right of dower," etc. This proposition Hand promptly repudiated, and followed this November 6, 1863, by reminding Rowland that, as he was counsel for Mrs. Cromelien as well as himself, it was not proper for him to listen to any proposal looking to the prejudice of her interest in these lands. February 4, 1864, Rowland admits in a letter of that date to Hand that, the fall his wife visited Detroit, she wrote him, quoting his language, "properly speaking, a maniac's letter, therein advising me, and notifying me of no more right in said property," etc. The visit of Mrs. Cromelien referred to was in 1859. In the same letter, he suggests a scheme to get an order of sale from the court of chancery, and place the title of the property by buying it in where it properly belonged, "with no prejudice to Mrs. C. by me, after which we can sell the property," etc. In a long letter addressed to Hand under date of May 30, 1864, after lavishing a wealth of invective in denouncing his wife, he says: "Such is the mother that trains and learns her children how to treat their father, in whom I place all on record, but that is its object to wean them from my parental affections, so that she and

others may get the property." March 31, 1865, in answer to Rowland's letter requesting Hand to accept a $300 order to be paid from the proceeds of the lots, Hand wrote, declining for several reasons, among others saying: "The fee or title of the land is in your wife, and no moneys which might remain from the sale of the lands after the Robinson-Bell decree shall be satisfied, unless with the consent of Mrs. Cromelien or an order from the court." Again he says, in the same letter: "Upon the record, that land belonged to Mrs. Cromelien, and by the laws of Michigan she had the exclusive right to sell and dispose of the land. The defense (of the mortgage suit), therefore, had special reference to her lands and her interest; and, if there was to be any misunderstanding between Mrs. C. and yourself, my natural and proper position, if I could not act for both, was to stay by the land I was defending and the owner of it as appeared by the records." November 13, 1865, Hand again writes him: "You will also bear in mind, while looking at the real position of the land, that the fee is in Mrs. Cromelien, subject to the Robinson mortgage and McKay mortgage, the real amount subject also to the Champ lease, said incumbrances, and the most amount of tax lien; and, when all these should be satisfied, the residue then belongs to Mrs. C. Such is the real state of the case, and it can be no advantage to you to blind your eyes as to the real state of the case." Replying December 1, 1866, to a visionary scheme proposed by Rowland to advertise and sell the land in lots, Hand again informs him that "the record shows the title to the land to be in your wife, subject to the Bell mortgage." Replying to this letter under date of December 10, 1866, Rowland acknowledges that he placed the title of the property in her name, though claiming that his purpose was to secure the use and benefit of both himself and wife in so doing. March 30, 1866, in a lengthy letter to George E. Hand, in reference to the relations between himself and his wife and the title to the property, Rowland says: "That said property was mine, as controlling it, the record of your city of 1836 will show that; and so, in about 1850, when I wanted to use it in business, she redeeded; and when I was done with it, for safe-keeping, I replaced it in her name." * * *

In view, therefore, of this overwhelming mass of evidence establishing the title of Amelia, the lack of anything whatever except the assertions of Rowland, made after he had alienated his wife's affections by contracting another alliance, and which, as has been said, are merely declarations in his own interest, uncorroborated by the slightest acknowledgment by Amelia of his claims, but repudiated constantly by her and by her acts, and the dominion which she exercised over the property, as well as her denials that his money had purchased it, it is impossible to find any foundation in the proofs for the claim of interest made in the right of Rowland, either by reason of his last will and testament or otherwise; and it would be sufficient to rest the determination of the case upon this ground alone, as it deprives the complainant of all title to relief. Other defenses, however, clearly warrant and require the same conclusion. As early as 1859, Rowland knew that his wife claimed the property in hostility to him, she "advising and notifying him of no more right in said property," as his letter of February 4, 1864, admits. He was again and again informed by Hand that she persisted in this claim, and asserted her absolute title to it; that taxes were accumulating upon the property, some of which she paid, and some of which were met by advances obtained in her interest from others. He knew, too, that Amelia, after the McKay mortgage was put upon record, and because of that instrument, declined to pay further taxes or procure advances therefor. In short, he was fully informed of the condition of the property, its needs, and the danger to the title from these constantly accruing incumbrances. He remained silent and inactive, promising much, but doing nothing, except to denounce his wife for refusing to accede to his wishes, and for obstructing his scheme to divert the property to the use of the children of Sarah Ferguson, with whom he was then living. For 10 years he remained quiescent, taking no steps whatever to enforce his alleged rights or disturb his wife's possession, but contenting himself with vain endeavors to deflect Hand from his duty to Amelia by urging him to persuade her to consent to a division of the property. This alone was a sufficient recognition of her title, without

proof of the delivery of the deed.   Gould v. Day, 94 U. S. 405, 412.   Then, in 1868, 26 years after Amelia had acquired the title, and 10 years after he had declared in his letter to Hand "that no sale or man could take the land from my wife," he filed a bill in the Wayne circuit court to compel a conveyance of the property by Amelia, and for an accounting with those who had advanced money to her to preserve the property from sacrifice on the faith of her ownership, which bill he suffered to be dismissed for failure to file security for costs. although but a short time before he had asserted his ability to raise the money and purchase the property at the foreclosure sale.   Except this half-hearted and feeble assertion of his alleged interest, he made no move whatever looking to the recovery of the land, or questioning her ownership.   After the foreclosure sale, he made a criminal complaint, whose allegations were mainly on information and belief, charging Hand with professional misconduct, and the betrayal of his (Rowland's) interest; but this was dismissed, and Hand made it the basis of a civil action for damages against Rowland, and obtained a verdict which vindicated him. Rowland lived until 1873, without further effort or assertion of interest in this property.   His wife, Amelia, survived him four years, dying in 1877. George E. Hand survived until 1889, though for several years prior thereto mentally incompetent and under guardianship.   Forty-nine years after the Washington Cromelien deed. thirty-two years after express notice to Rowland of Amelia's claim, twenty-four years after Daniel Hand acquired title to the property, eighteen years after Rowland's death, fourteen years after the death of his wife, several years after Hand had become an imbecile, and two years after his death, this bill of complaint was filed.   The excuses proffered for such unconscionable delay cannot avail under such circumstances.   Granting that Sarah Ferguson was without means, and that Rowland in his later years was impecunious, these facts are insufficient to condone their laches.   Norris v. Haggin, 136 U. S. 386, 10 Sup. Ct. 942; Hammond v. Hopkins, 143 U. S. 224, 12 Sup. Ct. 418.

Jasper P. Gates, for appellant.

John D. Conley, for appellee.

Before TAFT and LURTON, Circuit Judges, and CLARK, District Judge.

PER CURIAM.   This case has been very fully and satisfactorily discussed by the learned judge who presided at the circuit.   His statement of the case and a part of his opinion are given above.

We find:

1. That the conduct of Rowland Cromelien in accepting and acting under his wife's power of attorney, his express admissions in the correspondence with George E. Hand, and his admissions in the bill in equity filed by him March 13, 1868, establish beyond controversy his execution of the deed to the land in question to Washington Cromelien in 1842, and that of the latter's deed to Amelia Cromelien, and make clear that the legal title to the land was in Amelia Cromelien from 1842 to the date of the foreclosure sale, in 1867.

2. That there is no evidence in the record, available to Rowland Cromelien, having the slightest tendency to show that Amelia Cromelien held the title in trust for Rowland Cromelien, or that Rowland Cromelien had any equitable interest in the land.

3. That George E. Hand was the solicitor of Rowland Cromelien merely to defend him against the claim of Robinson as to his personal indebtedness, and not with respect to any interest in the mortgaged premises; that Hand fully and explicitly repudiated, more than four years before the foreclosure, any relation of attorney and client be-

tween him and Rowland which could impose on him an obligation to preserve the interest of Rowland in the land as against his wife; and that, under these circumstances, the correspondence between Hand and Rowland defining their relations, and containing admissions and statements as to the existence of the legal title in Amelia Cromelien, were not privileged, and were admissible in favor of Hand and his representatives.

4. That certainly from 1868, when Rowland Cromelien filed his bill in equity against Daniel Hand, George Hand, and Amelia Cromelien, Rowland knew that Daniel Hand and the others repudiated any claim on his part of an interest in the land as client or cestui qui trust, and no circumstances are shown which will excuse the laches necessarily involved in the delay of 23 years in thereafter filing the bill herein.

5. That the bill was properly dismissed in the court below—First because the claim of Rowland Cromelien's devisees is barred by laches; and, second, because, even if not so barred, the claim on the evidence has no merit in it.

The decree of the circuit court is affirmed, with costs.